**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FREDERICK J. GREDE, as Liquidation Trustee for Sentinel Management Group, Inc., | ) ) ) | |
| | ) | Case No. 08CV6587 |
| Plaintiff, | ) ) | Judge James B. Zagel |
| v. | ) ) | |
| STEPHEN M. FOLAN, JACQUES DE SAINT PHALLE, and FTN FINANCIAL SECURITIES CORP., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' RESPONSE TO TRUSTEE'S MOTION TO COMPEL

Contrary to the Trustee's assertion in its Motion to Compel Discovery that "defendants continue to refuse to participate in any discovery" except of their own choosing (Dkt. #77 at 1), Defendants have never taken the position that they will not comply with their discovery obligations. Defendants instead propose that "discovery should be conducted in phases" and "limited to ... particular issues" that are likely to be case-dispositive, Fed. R. Civ. P. 26(f)(3)(B), so that this litigation can be resolved in a matter that is "just, speedy, and inexpensive," as contemplated under Rule 1.

Rather than repeat the proposal for conducting staged discovery that is set forth in Defendants' Motion for Entry of a Case Management Order, filed with the court on May 6, 2009, Defendants respectfully attach that Motion as Exhibit A to this Response. Defendants look forward to the opportunity to discuss this proposal with the Court at the Status Conference on Monday, May 11, 2009 at 10:15 a.m.

Dated:  May 8, 2009                    Respectfully submitted,

/s/ Michael B. Slade
Brian D. Sieve, P.C. (ARDC #6199741)
Michael B. Slade (ARDC #6274231)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Howard M. Shapiro
Craig Goldblatt
John A. Valentine
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Mark D. Griffin
Lori H. Patterson
Kristine L. Roberts
BAKER, DONELSON, BEARMAN, CALDWELL
   & BERKOWITZ, PC
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone:  (901) 526-2000
Facsimile:  (901) 577-0870

***Attorneys for Defendants Stephen M. Folan, Jacques
de St. Phalle, and FTN Financial Securities Corp.***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Defendants' Response to Trustee's Motion to Compel** was filed electronically with the Clerk of the Court using the CM/ECF system on May 8, 2009, which will send notification of such filings to the parties registered with the Court's CM/ECF system, including the recipients shown below.

**Chris C. Gair**
**James Kevin McCall**
**Jeffrey Scot Eberhard**
**Vincent E. Lazar**
Jenner & Block LLP
330 North Wabash Avenue
Chicago, Illinois 60611

/s/ Michael B. Slade
*Attorney for Defendants Stephen M. Folan, Jacques de St. Phalle, and FTN Financial Securities Corp.*

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDERICK J. GREDE, as Chapter 11 Trustee for Sentinel Management Group, Inc., ) ) ) ) | |
| Plaintiff, ) ) | Case No. 08CV6587 |
| v. ) ) | Judge James B. Zagel |
| STEPHEN M. FOLAN, JACQUES DE SAINT PHALLE, and FTN FINANCIAL SECURITIES CORP., ) ) ) ) ) | |
| Defendants. ) ) | |

## DEFENDANTS' MOTION FOR ENTRY OF A CASE MANAGEMENT ORDER

Absent some way to streamline the resolution of this complex securities litigation arising from the collapse of Sentinel Management Group, Inc. ("Sentinel"), the discovery process is likely to require the expenditure of millions of dollars by Sentinel's bankruptcy estate to review and produce responsive materials from the more than 11 million pages of documents and approximately 50,000 voice recordings comprising Sentinel's files.[1] Defendants – a brokerage

---

[1]    At the outset of the Trustee's litigation against Bank of New York ("BONY") in the Bankruptcy Court, the Trustee refused to review Sentinel documents for responsiveness to BONY's discovery requests and insisted that BONY perform its own searches for responsive materials in the Trustee's enormous databases, consisting of more than 11 million pages of documents and 50,000 voice recordings. *See Grede v. BONY*, No. 08-cv-2582, Tr. of Proceedings at 32 (Feb. 24, 2009). During the parties' Rule 26(f) conference in this case on April 30, 2009, Defendants advised the Trustee's counsel that the process used in *Grede v. BONY* was not workable and that they expected the Trustee to produce only materials that are responsive to Defendants' discovery requests, as required under the Federal Rules of Civil Procedure. *See, e.g., In re Thomas Consol. Indus., Inc.*, No. 04 Civ. 6185, 2005 WL 3776322 at *8 (N.D. Ill. May 19, 2005) *aff'd* 456 F.3d 719 (7th Cir. 2006) (While "[the] Federal Rules allow a party to produce documents as they are kept in the ordinary course of business," plaintiff "remained obligated to sort through the documents himself and then produce only those responsive to the document requests."). Contrary to those requirements, the Trustee's counsel has taken the position that the Trustee will (in lieu of reviewing Sentinel materials and producing only those that are responsive to Defendants' discovery requests) provide Defendants with access to his databases, which almost certainly contains millions of documents and recordings that have nothing whatsoever to do with this case.

- 1 -

firm and two of its current and former employees whom Sentinel's Trustee asserts "bribed" the firm's Head Trader to purchase CDOs by taking him to dinners, sporting events, and the like – are likely to incur similarly substantial costs making their own document production and reviewing the discovery materials produced by the Trustee. To minimize these costs for both sides and promote the speedy resolution of this matter, Defendants propose that non-expert discovery proceed in two phases. Phase I would focus on whether New York law and the *in pari delicto* doctrine apply, to be followed by early summary judgment motions directed to those issues. Defendants believe that the issues subject to Phase I discovery will be dispositive. If Phase I does not resolve the case in its entirety, however, the parties would proceed to general discovery in Phase II with respect to any issues that remain.[2]

Phase I discovery and the summary judgment motions addressing Phase I issues would potentially be case-dispositive for the following reasons:

**Choice of Law.** In deciding Defendants' Motion to Dismiss, the Court did not resolve the question of whether New York or Illinois law controls the Trustee's state law claims. *See* Minute Order, Dkt. #65.[3] Clarifying this issue at the outset would advance the litigation substantially, because if New York law controls: (1) the state law claims – all of which relate to alleged deceptive practices in connection with securities transactions – would be preempted by the Martin Act;[4] and (2) the commercial bribery count would fail on the additional ground that

---

[2]     Defendants served objections to the Trustee's document requests and interrogatories on April 13, 2009. In light of the parties' disagreement concerning the staging of discovery, as well as the magnitude of discovery materials sought by the Trustee, Defendants have deferred making any further response to those discovery requests until that disagreement has been resolved by this Court.

[3]     The parties disagree as to whether the Trustee's state law claims are controlled by New York law, as provided in the letter agreements and securities offering circulars exchanged by the parties. *See* Dec. 15, 2005 Letter Agreement at 7, Dkt. #46, Ex. M; Offering Circular for PreTSL XII at 64, Dkt. #53, Ex. D.

[4]     New York courts have held that state law claims such as the Trustee's, when premised on alleged deceitful practices relating to securities, are preempted by the Martin Act, which is New York's Blue Sky Law equivalent. *See, e.g., Kassover v. UBS AG*, No. 08 CV 02753, 2008 WL 5331812, at *7-9 (S.D.N.Y. Dec. 19, 2008) (dismissing claims for consumer fraud, negligent misrepresentation, aiding and abetting breach of fiduciary duty, breach of implied covenants of good faith and fair dealing, and negligence in connection with marketing and sales of auction rate securities "as preempted" by Martin Act); *Granite Partners, L.P. v. Bear Stearns & Co.*, 17 F. Supp. 2d 275, 291-92 (S.D.N.Y. 1998) ("claims for breach of fiduciary duty and negligent and innocent misrepresentation, … which do not require a plaintiff to plead and prove intentional deceit, are covered by the Martin Act and cannot be asserted by private litigants").

there is no such cause of action under New York law.[5] This would leave only two causes of action, securities fraud under Rule 10b-5 (Counts Three and Five) and fraudulent transfer under §§ 548(a)(1)(A) and 550(a) of the Bankruptcy Code (Count Twelve). Resolving which state's law applies would also clarify whether the Trustee is subject to the *Wagoner* Rule.[6]

Defendants believe that choice of law discovery is likely to involve the production by both sides of discrete sets of documents that bear upon the existence of New York choice of law agreements and perhaps limited deposition testimony of certain current and/or former FTN and Sentinel employees concerning the existence and validity of such agreements. Such discovery could likely be completed within 90 days. In the parties' Rule 26(f) conference, the Trustee's counsel did not express a view on what other discovery, if any, would be relevant to the choice of law question. The Trustee's counsel instead contended that Sentinel's agreements with Defendants containing New York choice of law provisions are unenforceable because Charles Mosley was allegedly bribed with entertainment to enter into those agreements. As discussed below, this contention can be resolved in connection with *in pari delicto* discovery, which would address whether Mosley's entertainment-related conduct should be imputed to Sentinel.

**In Pari Delicto.** As the Court observed in both *Grede v. Bank of New York* ("*BONY*") and *Grede v. McGladrey & Pullen*, the cases brought by Sentinel's Trustee may be susceptible to early summary judgment under the *in pari delicto* doctrine.[7] Phase I *in pari delicto* discovery would focus on Sentinel management's responsibility for the alleged wrongdoing, whether that

---

[5]     The majority view among New York's intermediate appellate courts is that New York does not recognize a private cause of action for commercial bribery. *See Sardanis v. Sumitomo Corp.*, 279 A.D. 2d 225, 229-30 (N.Y. App. Div. 1st Dept. 2001) (holding that plaintiff/employer was not part of group that statute aimed to protect; and creation of private cause of action would be inconsistent with giving enforcement power to District Attorney); *Wint v. ABN Amro Mortgage Group, Inc.*, 19 A.D. 3d 588, 589-90 (N.Y. App. Div. 2d Dept 2005) (same); *but see Niagara Mohawk Power Corp. v. Freed*, 265 A.D. 2d 938, 939 (N.Y. App. Div. 4th Dept. 1999). Federal courts sitting in New York have followed the majority rule. *See Philip Morris, Inc. v. Heinrich*, No. 95 Civ. 0328, 1996 WL 363156, at *17-18 (S.D.N.Y. June 28, 1996) (refusing to recognize commercial bribery claim because state law was unclear and same relief could be obtained through other legal theories); *see also Johnson v. Nextel Comm'ns, Inc.*, No. 07 Civ. 8473, 2009 WL 928131, at *5 (S.D.N.Y. March 31, 2009) (same); *Philip Morris v. Grinnell Lithographic Co.*, 67 F. Supp. 2d 126, 140-41 (E.D.N.Y. 1999) (same); *Sierra Rutile Ltd. v. Katz*, No. 90 Civ. 4913, 1996 WL 556963, at *4 (S.D.N.Y. Oct. 1, 1996) (same).

[6]     *See, e.g., Kirschner v. Grant Thornton LLP*, No. 07-cv-11604, 2009 WL 996417 (S.D.N.Y. Apr. 14, 2009) (in case originally filed in an Illinois state court, the Court ultimately applied New York law and found that under *Wagoner*, "a bankruptcy trustee lacks standing to seek recovery on behalf of a debtor company against third-parties for injuries incurred by the misconduct of the debtor's controlling managers.").

[7]     *See Grede v. BONY*, No. 08-cv-2582, 2009 WL 188460, at *9 (N.D. Ill. Jan. 27, 2009); *Grede v. McGladrey & Pullen*, No. 08-cv-2205, 2008 WL 4425447, at *7 (N.D. Ill. Sept. 26, 2008).

wrongdoing benefited Sentinel (the adverse interest exception), and whether Sentinel was
dominated and controlled by the wrongdoers (the sole actor rule), as well as two sub-issues:

> **(1) Imputation of Mosley's Entertainment-Related Conduct to Sentinel.** The Court
> noted in its decision on Defendants' Motion to Dismiss that there is a question as to
> whether Charles Mosley's acceptance of entertainment from Defendants is "imputable to
> Sentinel" for *in pari delicto* purposes. *See* Dkt. #65. To resolve this issue, Phase I would
> address whether Sentinel ratified Mosley's entertainment-related conduct. Such
> ratification could be proven, for example, with evidence that Sentinel CEO Eric Bloom,
> Mosley's superior, was aware that Mosley frequently socialized with and was entertained
> by brokerage firm employees. *See, e.g., In re Bennett Funding Group*, 336 F.3d 94, 100-
> 01 (2d Cir. 2003); *Eastern Trading Co. v. Refco, Inc.* 229 F.3d 617, 621 (7th Cir. 2000).

> **(2) Purpose of Sentinel's Securities Purchases from Defendants.** The inquiry into
> Sentinel management's responsibility for the alleged wrongdoing would include the
> purpose of Sentinel's securities purchases from Defendants, which are alleged to be part
> of the leveraged investment scheme that led to Sentinel's collapse. *See* Compl. ¶ 6
> ("Sentinel collapsed under the weight of the illiquid and risky securities it had purchased,
> including the PreTSLs purchased from FTN, and the huge debt it had incurred to finance
> the purchase of such securities."). Thus, to the extent there is any question that the *in
> pari delicto* doctrine does not apply to Sentinel's fraudulent transfer claim under §§
> 548(a)(1)(A) and 550(a) – as the Trustee has contended – Phase I discovery would
> nevertheless potentially resolve that claim by addressing whether Mosley purchased the
> securities at issue for reasons other than an "actual intent" to hinder, delay, or defraud
> Sentinel's creditors, which is a necessary element under §§ 548(a)(1)(A) and 550(a). *See
> In re FBN Food Services, Inc.*, 82 F.3d 1387, 1394 (7th Cir. 1996). The evidence is
> likely to show, for example, that Mosley purchased the securities at issue to achieve
> higher yields in the House Account, thereby increasing his bonus – a fact the Trustee has
> acknowledged in this case and in proceedings against other parties.[8]

The *in pari delicto* doctrine, and the facts supporting the application of that doctrine
here, would potentially dispose of the Trustee's securities fraud claims, fraudulent transfer claim,
and any state law claims that survive the application of New York law. Even if the Court
determines that New York law does not control, the *in pari delicto* discovery described
above would potentially eliminate all claims except perhaps the Illinois Blue Sky Law claims,
which the Trustee contends are exempt from the *in pari delicto* defense under Illinois law.

As the Court observed in *BONY* and *McGladrey & Pullen*, *in pari delicto* discovery will

---

[8] *See, e.g.,* Compl. ¶¶ 40, 62, 63, 72, 75, 119, 143 (alleging Mosley's desire to increase his bonus);
*Grede v. Bloom*, No. 07 B. 1497, Adv. No. 07-981, Compl. ¶¶ 43-94, Dkt. #253 (Bankr. N.D. Ill. Oct. 11,
2007).

focus largely, if not entirely, on the actions of Sentinel and its management.[9] It is likely that discovery can be efficiently accomplished through a limited number of document requests, interrogatories, requests for admission to the Trustee and, if necessary, targeted depositions of the Trustee and former Sentinel employees. Where feasible, Defendants would seek to coordinate this discovery with the *BONY* and *McGladrey & Pullen* defendants to avoid duplicative discovery demands on the Trustee and third parties.

In overseeing the *in pari delicto* discovery in *McGladrey & Pullen*, the Court ruled that "documents ... made available to the auditors, and certain conversations that auditors had with Sentinel personnel as part of the audit" would be subject to discovery. *McGladrey & Pullen*, No. 08-cv-2205, Dkt. #96 at 1. Consistent with this approach, the Trustee would be permitted in Phase I to take similarly targeted discovery of the Defendants regarding communications between Sentinel and Defendants concerning Sentinel's investment activities.

Because Phase I issues would potentially be case-dispositive, the above-described phases provide a reasonable order for discovery by focusing on issues that could materially reduce the time and costs for all parties. How long Phase I would take will depend largely on (1) the amount of time Sentinel needs to complete its production of documents and voice recordings, and (2) if those materials are voluminous, the amount of time Defendants need to review those materials. Defendants propose that the parties meet and confer regarding the anticipated scope of Phase I discovery and provide the Court with a preliminary schedule for Phase I, which hopefully can be submitted on a joint basis.

****

The Trustee is not amenable to conducting phased discovery that addresses potentially dispositive issues, instead wishing to engage in discovery on all issues simultaneously. This approach would result in a wasteful repeat of the parties' discovery experience in *BONY*, which to date has involved countless hours of attorney and e-discovery vendor time performing document review and/or production on the full range of issues in that case, as well as the depositions of no less than 17 BONY employees. *See BONY*, No. 08-cv-2582, Tr. of Proceedings at 30-39 (Feb. 24, 2009). Regrettably, that massive effort occurred largely before

---

[9]    *See McGladrey & Pullen*, No. 08-cv-2205, Dkt. #96 at 2 ("And while discovery on the issue of who benefited from the fraud may be warranted, it is the trustee who appears to have more information on the subject at this point."); *BONY*, 2009 WL 188460, at *9 ("[A]pplication of the *Wagoner* rule should be addressed promptly, perhaps by summary judgment. The discovery with respect to this will lie primarily, if not entirely, against Sentinel's trustee and, in light of the Trustee's investigation of Sentinel's affairs.").

the reference to the Bankruptcy Court in that case was withdrawn and without regard to the possibility, subsequently recognized by this Court, that "[the Trustee] and [BONY] might be able to reach an early end to discovery on the *Wagoner* issue[.]" *BONY*, 2009 WL 188460, at *9. If there is to be any possibility of forestalling such enormous costs for both Sentinel's bankruptcy estate and Defendants here, it is critical that the parties focus their initial discovery efforts on the issues that are most likely to resolve the case expeditiously. The approach set forth above will not only hasten this matter's potential resolution, but may provide valuable guidance to the brokerage firm defendants in *Grede v. Rodriguez*, No. 09-cv-00193, a case in which precisely the same causes of action and legal defenses are at issue.[10]

### Conclusion

For all of the foregoing reasons, the Court should grant Defendants' Motion for Entry of a Case Management Order and enter an Order requiring phased discovery in which the parties: (1) focus first on issues relating to choice of law and the *in pari delicto* doctrine, as described above, followed by summary judgment motions on those issues (Phase I); and (2) do general discovery only in the event those motions are denied (Phase II).[11]

Dated: May 6, 2009      Respectfully submitted,

/s/ Michael B. Slade
Brian D. Sieve, P.C. (ARDC #6199741)
Michael B. Slade (ARDC #6274231)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

---

[10] The defendants in *Grede v. Rodriguez* have moved to dismiss the complaint in that action. Briefing will be complete on May 20, 2009. A discovery stay under the Private Securities Litigation Reform Act is in effect while the defendants' motion to dismiss is pending.

[11] As required by Local Rule 37.2, the parties have engaged in good faith attempts to resolve their differences, but have been unable to reach an accord. The first attempt occurred during the parties' Rule 26(f) teleconference held on April 30, 2009, at 2:00 p.m. E.S.T., which was attended by Jeffrey S. Eberhard and Anne P. Ray of Jenner & Block LLP as counsel for the Trustee, and John A. Valentine, David S. Molot, and Reginald B. McKnight of WilmerHale LLP and Mark D. Griffin, Kristine L. Roberts, and Lori H. Patterson of Baker, Donelson, PC as counsel for Defendants. The second attempt occurred on Wednesday, May 6, 2009 at 2:15 p.m. E.S.T. in a teleconference between Mr. Valentine, Mr. McKnight, and Mr. Eberhard. During both teleconferences, it was apparent that the parties could not agree on the staging or scope of discovery.

Howard M. Shapiro
Craig Goldblatt
John A. Valentine
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Mark D. Griffin
Lori H. Patterson
Kristine L. Roberts
BAKER, DONELSON, BEARMAN, CALDWELL
  & BERKOWITZ, PC
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone:  (901) 526-2000
Facsimile:  (901) 577-0870

***Attorneys for Defendants Stephen M. Folan, Jacques
de St. Phalle, and FTN Financial Securities Corp.***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Motion for Entry of a Case Management Order** was filed electronically with the Clerk of the Court using the CM/ECF system on May 6, 2009, which will send notification of such filings to the parties registered with the Court's CM/ECF system, including the recipients shown below.

> **Chris C. Gair**
> **James Kevin McCall**
> **Jeffrey Scot Eberhard**
> **Vincent E. Lazar**
> Jenner & Block LLP
> 330 North Wabash Avenue
> Chicago, Illinois 60611

/s/ Michael B. Slade

- 8 -