# EXHIBIT C

1

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3  FREDERICK J. GREDE, as Chapter  )
    11 Trustee for Sentinel         )
 4  Management Group, Inc.,         )  Case No. 08 C 6587
                                    )
 5              Plaintiff,          )  Chicago, Illinois
    -vs-                            )  June 11, 2010
 6                                  )  10:58 a.m.
    STEPHEN M. FOLAN, et al.,       )
 7                                  )
                Defendants.         )
 8  _____)

 9  FREDERICK J. GREDE, not         )
    individually, but as            )  Case No. 09 C 193
10  Liquidation Trustee and         )
    Representative of the Estate    )  Chicago, Illinois
11  of Sentinel Management Group,   )  June 11, 2010
    Inc.,                           )  10:58 a.m.
12              Plaintiff;          )
    -vs-                            )
13                                  )
    DELORES E. RODRIGUEZ, et al.,   )
14                                  )
                Defendants.         )
15
16                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE JAMES B. ZAGEL
17  APPEARANCES:

18  For the Plaintiff:     MR. GREGORY M. BOYLE
                           Jenner & Block LLP
19                         353 North Clark Street
                           Chicago, IL 60654-3456
20                         (312) 222-9350

21  Court Reporter:

22          KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                      Official Court Reporter
23                 United States District Court
            219 South Dearborn Street, Suite 2144-A
24                    Chicago, Illinois 60604
                    Telephone:  (312) 435-5569
25                     www.Kathyfennell.com
```

```
 1   APPEARANCES:   (Continued)

 2   For Defendants FTN,
     Folan and De Saint
 3   Phalle:                MR. JOHN VALENTINE
                            Wilmer Cutler Pickering Hale and Dorr,
 4                          LLP
                            1875 Pennsylvania Ave., N.W.
 5                          Washington, DC  20006
                            (202) 663-6000
 6
                            MR. MICHAEL B. SLADE
 7                          Kirkland & Ellis LLP (Chicago)
                            300 N. LaSalle Street
 8                          Chicago, IL  60654
                            (312) 862-2200
 9
     For Third-Party Plaintiffs
10   Folan and De Saint
     Phalle:                MR. ROYAL B. MARTIN
11                          Martin, Brown & Sullivan, Ltd.
                            321 South Plymouth Court
12                          10th Floor
                            Chicago, IL  60604
13                          (312) 360-5000

14                          MR. MICHAEL B. SLADE
                            Kirkland & Ellis LLP (Chicago)
15                          300 N. LaSalle Street
                            Chicago, IL  60654
16                          (312) 862-2200

17

18   For Defendant
     Rodriguez:             MR. KEVIN M. FLYNN
19                          Kevin M. Flynn & Associates
                            77 West Wacker Drive
20                          Suite 4800
                            Chicago, IL  60601
21                          (312) 456-0240

22   For Defendant Mohr:    MR. PHILLIP S. REED
                            Patzik, Frank & Samotny, Ltd.
23                          150 South Wacker Drive
                            Suite 1500
24                          Chicago, IL  60606
                            (312) 551-8300

25
```

```
 1  APPEARANCES:   (Continued)

 2  For Defendant KBW:        MR. SCOTT R. RAUSCHER
                              Sidley Austin LLP
 3                            One South Dearborn Street
                              Chicago, IL  60603
 4                            (312) 853-7000

 5  For Defendant Cohen
    & Company Securities,
 6  LLC:                      MR. CHARLES M. HART
                              Duane Morris LLP
 7                            1940 Route 70 East
                              Suite 200
 8                            Cherry Hill, NJ  08003
                              (856) 874-4275
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1     (Proceedings heard in open court:)
2         THE CLERK:  2008 C 6587, Grede versus Folan, et al.
3  and 2009 C 193, Grede versus Rodriguez.
4         MR. VALENTINE:  Good morning, your Honor.  John
5  Valentine for FTN, Steve Folan and Jacques De Saint Phalle.
6         MR. FLYNN:  Good morning, your Honor.  Kevin Flynn on
7  behalf of the defendant Delores Rodriguez.
8         MR. SLADE:  Mike Slade also for the defendants.
9         MR. MARTIN:  Royal Martin on behalf of Jacques De
10 Saint Phalle and Stephen Folan.
11        MR. BOYLE:  Good morning, your Honor.  Greg Boyle on
12 behalf of the trustee.
13        MR. RAUSCHER:  Scott Rauscher on behalf of Keefe,
14 Bruyette & Woods.
15        MR. HART:  Charles Hart on behalf of Cohen Securities.
16        MR. REED:  Phillip Reed on behalf of Barry Mohr.
17        THE COURT:  You can tell your partner I'm slaving away
18 at Sentinel versus Bank of New York Mellon.
19        MR. BOYLE:  I apologize, your Honor.  I couldn't hear.
20        THE COURT:  Yes, but the others did, and they'll tell
21 you.
22    (Laughter.)
23        MR. FLYNN:  He's sorry for the adverse ruling.
24        THE COURT:  Okay.  What's up with this?
25        MR. BOYLE:  Your Honor, we were last before you in

1  March.  Your Honor issued your April 8th order staying full
2  merits discovery for nine weeks until May 26th so FTN and the
3  defendants could proceed on their Phase 1 discovery
4  unencumbered by that.
5        They've done so.  They've taken depositions.  We
6  expected to have written responses to our document requests and
7  interrogatory answers by May 26th or after May 26th when the
8  stay was lifted.  We don't have amended answers.  Their answers
9  still have objections to Phase 1 -- anything outside of Phase 1
10 discovery.
11       And then they filed a status report with your Honor
12 Wednesday that seeks to have the Court put off full merits
13 discovery for another five months, until October, so they can
14 take a few more Phase 1 depositions and file a partial summary
15 judgment motion on their ratification theory.
16       There's no reason to delay full merits discovery into
17 the full scope of this defendant's wrongdoing for any period of
18 time.  Your Honor, we just ask that we be allowed to proceed as
19 you indicate in your April 8th order.
20       This summary judgment motion, even if successful, is
21 not going to resolve all the claims in this case, and full
22 merits discovery is going to have to proceed regardless.
23       In their own status report, they so much as
24 acknowledge that by indicating they just want time to brief
25 this summary judgment motion and then without, you know, a

1 ruling coming in, then commence full merits discovery. There's
2 no reason to delay that.
3 They have surrounded me with lots of lawyers here
4 today who can fully work in parallel on whatever type of
5 motions they want to file, while the trustee is able to get
6 full discovery and prepare this case for trial.
7 They do make a highly speculative claim that somehow
8 an eventual ruling on the commercial bribery claim may somehow
9 lead to an easier resolution of the other counts on a theory of
10 in pari delicto, but I think, your Honor, that's a big leap,
11 and it ignores your Honor's prior ruling or what you noted in
12 your prior ruling in April of last year on the motion to
13 dismiss, which is that if the Trustee can prove his case and
14 the scheme here with Mosley putting money in his own pocket,
15 then the Blooms and Sentinel are not going to be in pari
16 delicto. And that's just not a claim -- that's just not a
17 defense that's going to be susceptible to summary judgment no
18 matter what happens here.
19 Moreover, as we laid out in the response we filed
20 yesterday to the status report, the evidence to date does not
21 indicate the defendants are likely to prevail on this
22 ratification defense. Their key witness is still Mr. Folan,
23 who has no credibility, having admitted now that he falsely
24 stated in his expense reports and his interrogatory answers
25 that Eric Bloom was in attendance at many of these events, who

1 now through third-party discovery it's been shown that he has
2 continued to testify falsely about whether he purchased things
3 like lap dances for Mr. Mosley at the Platinum Plus Club, and
4 even the one-sided summary of the evidence that's in their
5 status report, what your Honor will see is that to divert the
6 attention away from their wrongdoing, their discovery is trying
7 to show that other Sentinel employees or third parties knew
8 about entertainment by brokers generally, and that simply is
9 not going to be enough for them to prevail on a ratification
10 defense that requires that they show that the Blooms and
11 Sentinel had full knowledge of all the material facts of these
12 transactions.
13     And what happened with other brokers who were not
14 similarly situated, because they weren't entertaining on a
15 weekly basis to try and sell CDOs and PreTSLs, is simply
16 irrelevant.  And in addition, your Honor, they've been able to
17 come up with no admissible evidence beyond the speculation
18 they've invited in their questioning about what Eric Bloom did
19 or didn't know about the Sentinel entertainment.
20     Indeed when asked point blank, these witnesses, not
21 surprisingly, say I don't know what was in Eric Bloom's head or
22 what he knew or didn't know about this.
23     So, your Honor --
24     THE COURT:  I think.
25     MR. BOYLE:  -- we just think there's no reason to

1  delay the discovery here any further.
2       THE COURT: I think I understand your point.
3       A brief response from somebody?
4       MR. VALENTINE: Certainly, your Honor.
5       We understood your instructions at the last status
6  conference a little differently. We thought your Honor wanted
7  to see what progress we could make on establishing that
8  Sentinel Management was aware of the entertainment and,
9  therefore, it couldn't be a bribe. That's what we've been
10 focusing on doing.
11      Our understanding was that then we would come in and
12 talk about what to do next, whether to keep going --
13      THE COURT: Right.
14      MR. VALENTINE: -- with finishing this phase or moving
15 on to full merits discovery, as Mr. Boyle just requested.
16      THE COURT: I'm ready to tell you what I think you
17 should do next, and some of this, in all honesty, is because of
18 the two-and-a-half weeks I spent in a bench trial in the
19 Trustee's suit against Bank of New York Mellon.
20      And I now have what I believe to be a fairly clear
21 understanding of the methodology at Sentinel, particularly
22 during the last seven or eight months of its existence and
23 probably before. And as a result of that hearing, I even now
24 know what a PreTSL is, which was a financial instrument I had
25 not been acquainted with before.

1          The idea that you are going to get clear evidence of
2  ratification out of anything having to do with the operations
3  and methodologies of Sentinel is -- is chasing a dream.
4          You might have enough to raise a defense some day, but
5  you will never get to something that's particularly formal on
6  ratification.
7          You are dealing with people who were moving in an
8  extraordinarily fast world.  At one point, their overnight loan
9  I believe exceeded $500 million.  I have heard recordings in
10 which a Bank of New York Mellon officer, who's been routinely
11 doing overnight loans and rebooking them for months on end,
12 asks the relatively low-ranking person what the night's loan is
13 going to be, and the answer I think was 424 million, and the
14 banker said, wow; not a common occurrence in that particular
15 world.
16         The truth is, is that lots of people were operating on
17 their own, and maybe there's a case there, but it's not a case
18 you're going to get on summary judgment.  You're not going to
19 kill them on ratification that way.
20         MR. VALENTINE:  But --
21         THE COURT:  Given my assessment of this, I think you
22 ought to go ahead with the rest of it.
23         MR. VALENTINE:  May I speak briefly to that, your
24 Honor?
25         THE COURT:  Sure.

1    MR. VALENTINE: I don't know if you've had a chance to
2 look at our status report and the evidence that we've put in
3 there. We are only seeking to show for a partial summary
4 judgment motion with respect to the Trustee's commercial
5 bribery theory that Sentinel Management really was well aware
6 of the nature, scope and frequency of the entertainment and
7 that really there was no secrecy surrounding the entertainment
8 at all at Sentinel, which means that it's not a bribe in the
9 first place. That's their burden to show that it's a bribe.
10 It's not ours.
11    THE COURT: I -- when you started up by saying "well
12 aware," you lost me.
13    MR. VALENTINE: We have witnesses who testified to
14 conversations with Eric Bloom. One of them said that Eric --
15 he discussed with Eric Bloom how frequently our broker --
16    THE COURT: I understand you could survive their
17 summary judgment motion. I will grant you, you can survive
18 their summary judgment motion, but I don't think they're going
19 to have any trouble surviving yours.
20    So whatever I did in terms of phase of discovery, the
21 limits are off and you can just batter each other around on
22 this one.
23    So -- and I was sort of inclined to that view anyway,
24 given the nature of litigations of this sort, but as a result
25 of hearings in a related case, I'm quite clear you will never

1 reach the Holy Grail on ratification. If you tell me that you
2 would be able to raise it as a defense, probably you will.
3 MR. VALENTINE: Your Honor, we are not asserting in
4 the first instance that this is our defense that we need to
5 raise.
6 Our primary argument is going to be that the Trustee
7 will not be able to educe any evidence that the entertainment
8 was a secret from Sentinel Management and, therefore, it was
9 not a bribe.
10 THE COURT: Believe me, you're just going to have to
11 go all the way down this route, and I would -- the reason I do
12 it in phases is I would prefer that you didn't have to do it,
13 but you do. It's where it's going to wind up.
14 If I allowed you to continue down this path in six or
15 eight or ten weeks, I would have to undo what I've done today,
16 since I know what I think is behind the doors is going to be
17 triable issues on virtually everything in this case, so the
18 gloves are off.
19 MR. BOYLE: And, your Honor, that's all -- we
20 appreciate that. That's all we're looking for. We agree this
21 is a case that's going to go to trial, and we've just got to
22 start getting ready for it.
23 THE COURT: And I also agree with you that it's going
24 to go to trial.
25 Give them a status in October.

```
 1                THE CLERK:  October 15th, 10:00 a.m.
 2                THE COURT:  Thank you.
 3                MR. FLYNN:  Thank you, your Honor.
 4                MR. BOYLE:  Thank you, your Honor.
 5                MR. VALENTINE:  Thank you, your Honor.
 6                MR. BOYLE:  Your Honor, we're also here on the KBW
 7    Cohen matters.
 8                THE COURT:  Right.
 9                MR. BOYLE:  We are in active discovery.  We've got
10    depositions scheduled out through July right now and a couple
11    more to get on the calendar.  So I, frankly, think it makes
12    sense to just, as we've done before, put it on the same status
13    and we'll proceed.
14                THE COURT:  That's swell.
15                MR. BOYLE:  Right.  And I guess the only thought I had
16    on that, your Honor, is I assume your ruling applies to Phase 1
17    discovery versus non-Phase 1 --
18                THE COURT:  Yes.
19                MR. BOYLE:  -- in the KBW cases.
20                THE COURT:  You may as well go at it because you're
21    going to wind up there anyway.
22                MR. BOYLE:  Right.  Appreciate your time, your Honor.
23    Thank you.
24                THE COURT:  Thanks.
25                MR. VALENTINE:  Good morning, your Honor.
```

1   (Which were all the proceedings heard.)
2              C E R T I F I C A T E
3       I certify that the foregoing is a correct
4  transcript from the record of proceedings in the above-entitled
5  matter.
6
   */s/ Kathleen M. Fennell*
7                                          June 14, 2010
   _____      _____
8       Official Court Reporter              Date
     United States District Court
9    Northern District of Illinois
          Eastern Division