**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FREDERICK J. GREDE, as Liquidation Trustee of the Sentinel Liquidation Trust,<br><br>    Plaintiff,<br><br>v.<br><br>STEPHEN M. FOLAN, JACQUES DE SAINT PHALLE, FTN FINANCIAL SECURITIES CORP., and FIRST TENNESSEE BANK, N.A<br><br>    Defendants. | Case No. 08CV6587<br><br>Judge James B. Zagel |
| FREDERICK J. GREDE, as Liquidation Trustee of the Sentinel Liquidation Trust,<br><br>    Plaintiff,<br><br>v.<br><br>FTN FINANCIAL SECURITIES CORP. and JACQUES DE SAINT PHALLE,<br><br>    Defendants. | Case No. 09CV2258<br><br>Judge James B. Zagel |

**EXHIBITS PARTIALLY
FILED UNDER SEAL**

**DEFENDANTS' MOTION TO COMPEL TRUSTEE TO PRODUCE DOCUMENTS
IN RESPONSE TO DEFENDANTS' JANUARY 5, 2011 DOCUMENT REQUESTS**

    Stephen M. Folan, Jacques de St. Phalle, FTN Financial Securities Corp., and First Tennessee Bank, N.A. ("Defendants") respectfully move this Court to compel the Trustee to

produce several categories of relevant documents that the Trustee has withheld from its responses to Defendants' Fourth Set of Requests for the Production of Documents in the estate action and Defendants' First Set of Requests for the Production of Documents in the customer case ("Requests") (attached as Exhibits A & B). The documents at issue all relate to activities undertaken by the Trustee and his agents during the years since his appointment as Sentinel's bankruptcy Trustee, and none of them were included in the Trustee's *en masse* production of Sentinel business records at the outset of this litigation. These documents are plainly within the broad scope of discovery permitted under the Federal Rules and producing them will not be unreasonably burdensome for the Trustee.

Defendants served the pertinent Requests on January 5, 2011. On February 7, the Trustee broadly objected to nearly all of the Requests, and indicated an intent to withhold large categories of responsive documents. *See* Exhibit C. Counsel for Defendants thereafter engaged in extensive consultations with the Trustee's counsel to try to resolve these disputes in compliance with Local Rule 12K, but met with only very limited success.[1] The parties have reached an impasse with respect to several Requests and, as a result, Defendants now move to compel with respect to seven (7) of their original twenty-three (23) requests.[2]

## ARGUMENT

---

[1] In particular, on February 15 at 4:30 pm CST, Patrick Carome, Counsel for Defendants, consulted with Anne Ray, Counsel for the Trustee, by telephone. On February 18, Mr. Carome wrote to Ms. Ray in a further attempt to avoid the need for this motion. *See* Exhibit D. On February 22, Ms. Ray responded, agreeing to provide a few types of documents that the Trustee had initially refused to produce, but still maintaining the Trustee's refusal to produce other significant categories of relevant materials. *See* Exhibit E. During yet another telephone call between Mr. Carome and Ms. Ray on March 2 at 3:00 pm CST, the parties reached an impasse with respect to the eight Requests that are the subject of this motion.

[2] While Defendants reserve the right to pursue additional disputed categories of documents through a subsequent motion to compel, the present motion focuses on only the eight Requests discussed herein.

The Supreme Court has broadly construed relevancy under Fed. R. Civ. P. 26(b)(1) "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The categories of documents at issue on this motion all meet this standard and fairness dictates that Defendants have access to them.

I.  **THE TRUSTEE SHOULD PRODUCE NON-PRIVILEGED DOCUMENTS PERTAINING TO HIS COMMUNICATIONS WITH SENTINEL PERSONNEL (REQUEST 2).**

Defendants' Request No. 2 seeks all documents in the Trustee's possession constituting, reflecting, or concerning communications between, on the one hand, the Trustee and his representatives and, on the other hand, any current or former Sentinel personnel or any of their representatives.[3] The Trustee has flatly refused to produce any such documents. For purposes of this motion, Defendants are seeking only non-work-product-protected materials responsive to this Request. This would include, for example, any written correspondence exchanged between the Trustee's representatives and any of the Sentinel personnel or their counsel. Such material may shed light on events and activities that transpired at Sentinel during the times relevant to the present litigation, and as such Defendants are plainly entitled to receive it in discovery.

---

[3] Request No. 2 seeks the following: All documents constituting, reflecting, or concerning communications, including but not limited to interviews and meetings, between, on the one hand, you or any of your lawyers, representatives or agents and, on the other hand, any current or former employee, officer, director, agent or consultant of Sentinel Management Group, Inc. (including but not limited to Philip M. Bloom, Eric A. Bloom, Charles K. Mosley, J. Matthew Keel, Teresa C. Arana, Steven L. Stitle, Jeffrey J. Logan, Cynthia Madrigal, Crystal M. York, Chaya Schmoolker, Jennifer Vance, Mark Seplowin, and Regina Koehler) or anyone representing or acting as a lawyer, representative, or agent for any such person or for Sentinel.

II. **THE TRUSTEE SHOULD PRODUCE ALL DOCUMENTS RELATING TO ITS INTERVIEWS OF SENTINEL'S FORMER CFO, TERESA ARANA (REQUEST 15).**

Based on Request No. 15,[4] Defendants seek an order compelling the Trustee to produce all notes and memoranda created by the Trustee or his representatives concerning interviews of, or communications with, Teresa Arana, who served as the Sentinel's Chief Financial Officer from January 2005 until its bankruptcy. While Request No. 15 sought such material with respect to a broader group of former Sentinel senior executives, this motion targets only Arana-related materials. Defendants' arguments for overcoming the Trustee's claim of work product protection for this Arana-related material are especially strong because (1) the Trustee represented that Ms. Arana is one of only two of the senior Sentinel executives named in Request No. 15 who subjected themselves to "substantive" interviews attended by Trustee representatives, (2) Ms. Arana, in contrast, flatly refused to be interviewed by Defendants' representatives, and (3) at depositions taken by Defendants' counsel, Ms. Arana declined to answer any substantive questions, purportedly based on her Fifth Amendment right against self-incrimination.

Ms. Arana is one of the most important figures in this case. She was Sentinel's Chief Financial Officer during its last two years of existence. Accordingly, she was familiar with at least many of the aspects of Sentinel's operations that the Trustee alleges were a massive fraud.

---

[4] Request No. 15 seeks the following: All documents, including but not limited to, all documents constituting notes or memoranda created by you or any of your employees, agents, lawyers or representatives, that either (a) concern interviews or other communications that you or any of your employees, agents, lawyers or representatives have had with Philip Bloom, Eric Bloom, Charles Mosley, Teresa Arana or Matthew Keel or any of their representatives or lawyers (collectively, the "Sentinel Fifth Amendment Witnesses"); or (b) concern any fact, information or insights that you or any of your employees, agents, lawyers or representatives derived, discovered, developed or learned, in whole or in part, through the use of or with the assistance of, any fact, information, statement, document, or other matter that any of the Sentinel Fifth Amendment Witnesses conveyed or provided during any such interview or communication.

That familiarity is confirmed in documents she herself authored within days after Sentinel's declaration of bankruptcy, in which she both (1) candidly acknowledges that she had known for a year or more about core aspects of the secret and unlawful scheme and (2) repeatedly indicates that former Sentinel CEO Eric Bloom had even greater — and earlier — knowledge than she did. *See **Sealed*** Exhibits F and G.[5] Other documents indicate Ms. Arana's direct knowledge of Sentinel's substantial purchases of high-yield, high-risk CDO securities such as the PreTSL securities Sentinel bought from FTN, her direct participation in discussions with Eric Bloom and others regarding how to account for such securities on Sentinel's books, her receipt of internal Sentinel emails explicitly characterizing such securities as "illiquid," and her complicity in Sentinel's use of customer assets as collateral for massive loans that Sentinel secretly used to finance investments for the benefit of Eric Bloom, Philip Bloom and other Sentinel insiders. *E.g.*, FTN-Arana Dep. Exhibits 31, 32, 33 and 34 (attached as Exhibits H-K, ***Sealed*** in part). For these and other reasons, it appears Ms. Arana has substantial knowledge that refutes the Trustee's central theory that no one within Sentinel understood trust-preferred CDO securities, such as the PreTSL securities that Sentinel purchased from FTN.

The work product protection typically afforded this sort of material is overcome here because Defendants are unable through other means to obtain or replicate this highly relevant information. As this Court well knows, the protection of attorney work product is not absolute. Rule 26(b)(3) provides that a party may pierce the work product protection by showing a

---

[5]  Out of an abundance of caution, Defendants are submitting Exhibits F and G under seal because Ms. Arana's counsel has asserted on behalf of Ms. Arana that they are subject to attorney-client privilege. In fact, even if these documents were once privileged, which Defendants do not concede, any privilege was lost first when Ms. Arana wrote and then abandoned them on Sentinel's computer system following Sentinel's bankruptcy, and again when she and her attorney repeatedly failed to take adequate actions to protect their confidentiality following their open usage at depositions in this and other litigations.

"substantial need for the materials" and an inability "without undue hardship, to obtain their substantial equivalent by other means." Defendants' substantial need for discovery pertaining to what Ms. Arana knew and said about Sentinel's internal operations in the wake of Sentinel's bankruptcy is self-evident. Moreover, as a result of her invocation of the Fifth Amendment and refusal to make herself available for interviews by Defendants, Defendants have had no access whatsoever to this highly relevant factual information. It would be exceedingly unfair — indeed, a denial of basic due process — to permit the Trustee to prosecute these actions in circumstances in which he and his lawyers have full knowledge of Ms. Arana's personal accounts of what happened within Sentinel but Defendants are largely in the dark. This is a classic paradigm of the circumstances in which courts have determined that a litigant must turn over work product material to its adversary. *See SEC v. Sentinel Mgmt. Group, Inc.*, 07-cv-04684, Docket #190 (N.D. Ill., Kocoras, J. Dec. 2, 2010)(ordering production of interview materials, in part, based on the unfairness of opposing party's access to witnesses that subsequently took the Fifth Amendment); *SEC v. Thrasher*, 1995 WL 46681, at *9 (S.D.N.Y. Feb. 7, 1995) (ordering production where witnesses were unavailable because, among other things, they had or were expected to take the Fifth Amendment); *United States v. Davis*, 131 F.R.D. 391, 395 (S.D.N.Y. 1990) (ordering production where a witness was hostile to one party and had invoked the Fifth Amendment); *see also In re Grand Jury Investigation*, 599 F.2d 1224, 1231-32 (3d Cir. 1979) (ordering production of opposing counsel's interview memoranda where witness's unavailability was due to death).

While Defendants obviously do not know what facts and statements Ms. Arana provided during interviews conducted or attended by the Trustee or his representatives, it is likely that such information will, at a minimum, assist Defendants in uncovering admissible evidence of

which they may not otherwise be aware. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (witness statements may "give clues as to the existence or location of relevant facts"). Defendants may well be able to use the knowledge that Ms. Arana said during an interview that "X" happened to find or develop other, admissible evidence to the same effect, either by probing the recollections of lower-level Sentinel personnel who are not refusing to testify or uncovering corroborating documentary evidence that they would not otherwise have been able to find or recognize. In either case, it would be manifestly unfair to deny Defendants such discovery.[6]

Such discovery is a basic need in any contested litigation, and its importance in the present cases, where all of Sentinel's key former managers and officers are asserting the Fifth and all but one of them have refused to be interviewed by Defendants, cannot be overstated. The need for this information is even further underscored by the fact that the few former low-level Sentinel employees who have answered questions at depositions have repeatedly disclaimed relevant knowledge and stated that it is Sentinel's now close-mouthed former CFO, Ms. Arana, who should know the answers.[7] The potential impact of access to such information on the defense of this case is enormous. To take just one example, if that information helps Defendants find or recognize admissible evidence indicating that Bloom, Arana and/or other senior Sentinel

---

[6] Even if the Trustee were able to establish that some limited portions of its Arana interview materials qualify as "opinion" work product, Defendants' need for the materials is sufficiently great as to overcome even the "heightened" level of protection that arguably would be applicable. Moreover, even if the Court were to conclude that opinion work product is present and should not be disclosed, the appropriate approach would be limited redaction, rather than wholesale withholding. *See SEC v. Sentinel Mgmt. Group, Inc.*, 07-cv-04684, Docket #190 (N.D. Ill., Kocoras, J.) (ordering production of interview materials subject to narrow redactions).

[7] *See, e.g.*, Crystal Tillett Dep. Tr.: 32:16-33:4, Feb. 16, 2011(responding "ask Theresa [Arana]" when asked about the House gain/loss allocation spreadsheet) (excerpt attached as *Sealed* Exhibit L); Jeffrey Logan Dep. Tr.: 47:11-48:2, Mar. 7, 2011 (recalling a situation where Eric Bloom, Mosley, and Arana were discussing the suitability of PreTSLs, but disclaiming "know[ledge of] what was said between the three of them") (excerpt attached as *Sealed* Exhibit M),.

officers knew about and blessed Sentinel's alleged leveraging scheme, and that Sentinel's purchases of CDO investments from FTN were in furtherance of that scheme, that would establish an *in pari delicto* defense that should defeat most, if not all, of the Trustee's claims. Of course, the possibility that the contents of the redacted interview summaries may themselves not qualify as admissible evidence,[8] but may instead be a bridge to identifying relevant and admissible evidence, does not diminish the need or importance of such discovery. As the Supreme Court has clearly stated, "where access to witnesses or to their information is unequal, discovery of their statements is often granted solely to help a party prepare for trial *regardless of any eventual evidentiary value of the out-of-court statements.*" *United States v. Nobles*, 422 U.S. 225, 251 (1975) (emphasis added).

### III. THE TRUSTEE SHOULD PRODUCE DOCUMENTS PERTAINING TO HIS NON-PRIVILEGED COMMUNICATIONS WITH OTHER THIRD PARTIES HE HAS ACCUSED OF CAUSING THE SAME OR SIMILAR INJURIES TO SENTINEL OR ITS CUSTOMERS (REQUEST NO. 3).

Defendants' Request No. 3 seeks documents reflecting or concerning communications between the Trustee (or his representatives) and various other third parties who interacted with Sentinel during the periods relevant to the Trustee's claims against Defendants.[9] For purposes of this motion to compel, Defendants are treating this Request as having been narrowed to seek

---

[8] Until Defendants see the Trustee's Arana interview materials, they are not in a position to assess whether some portions of them might be admissible under the applicable rules of evidence, possibly including Fed. R. Evid. 801(d) (admissions by party-opponent not hearsay) and 804 (hearsay exceptions when declarant is "unavailable").

[9] Request No. 3: All documents constituting, reflecting, or concerning communications, including but not limited to interviews and meetings, between, on the one hand, you or any of your lawyers, representatives or agents, and, on the other hand, any current or former employee, officer, director, agent, counsel, or representative of any of the following: The Bank of New York; The Bank of New York Mellon Corp.; Xenon Partners, LP; Dynamic Allocation CTA Fund LLC; Keefe, Bruyette, & Woods Inc.; Cohen & Company Securities, LLC; Delores E. Rodriguez; Barry C. Mohr, Jr.; McGladrey & Pullen, LLP; Altschuler, Melvoin & Glasser, LLP; and Victor Johnson.

documents pertaining only to communications with other entities or persons whom the Trustee has sued for allegedly participating in, facilitating, or aiding and abetting wrongdoing on the part of Sentinel insiders, namely the Bank of New York, the Bank of New York Mellon Corp., Keefe, Bruyette, & Woods Inc., Delores E. Rodriguez, Barry C. Mohr, Jr., Cohen & Company Securities, LLC, McGladrey & Pullen LLP, and G. Victor Johnson.[10]

Non-privileged documents pertaining to communications between the Trustee (or his representatives) and his other third-party adversaries are likely to shed light on matters that are relevant to the present cases because, according to the Trustee's own allegations, each of these third parties played an important role in the story of Sentinel and its collapse. While Defendants recognize that *some* of the Trustee's communications with these entities and persons may have little bearing on the claims and defenses in these cases — for example, communications devoted solely to scheduling meetings or depositions or other non-substantive matters — Defendants initially presumed that it would be less burdensome for the Trustee to simply provide them with access to all such communications rather than having to devote resources to sorting the wheat from the chaff. But when the Trustee's counsel insisted that Defendants identify particular relevant subject areas they wished to explore through this Request, Defendants readily obliged by offering to limit this Request to documents pertaining to communications with the specified third parties that touched on any of the following subjects:

- substantive legal issues about claims or potential claims against any third parties and/or Sentinel insiders;

- likelihood of success of claims against third parties and/or Sentinel insiders;

---

[10] *See, e.g., Grede v. The Bank of New York et al.*, 08-cv-2582; *Grede v. Rodriguez, et al.*, 09-cv-00193; *Grede v. Keefe, Bruyette, & Woods Inc et al*., 09-cv-3072; *Grede v. McGladrey & Pullen, LLP and Victor Johnson*, 08-cv-2205.

- injury or damages suffered by the Sentinel estate or any Sentinel customer, including any documents relating to causation, responsibility for, or potential sources of recovery with respect to such injury or damages;

- Sentinel's borrowing from BONY or its use of leverage;

- actual or alleged wrongdoing by any Sentinel insider;

- PreTSLs or other CDO securities or HomeBanc (securities of which FTN sold to Sentinel, according to the Trustee, in violation of various laws);

- FTN, Steve Folan, or Jacques de St. Phalle (three of the four Defendants in these cases);

or

- entertainment, including any alleged connection between entertainment of Sentinel personnel and any securities transactions engaged in by Sentinel.

Defendants respectfully submit that there can be no serious argument that non-privileged documents pertaining to the Trustee's communications with its current or former adversaries on these obviously relevant topics may properly be withheld from discovery.

## IV. THE TRUSTEE SHOULD PRODUCE DOCUMENTS PERTAINING TO ITS NON-PRIVILEGED COMMUNICATIONS WITH SENTINEL CUSTOMERS (REQUEST NO. 4).

Defendants' Request No. 4 seeks documents constituting, reflecting, or concerning communications between the Trustee and his representatives and any Sentinel customer.[11] There does not appear to be any serious dispute over the relevance of these documents, which may refer to, or indicate the existence of, historical facts or events relating to the failure of Sentinel, the reasons for that failure, the nature and extent of damages or injuries allegedly suffered by

---

[11] Request No. 4 seeks: All *documents* constituting, reflecting, or concerning communications, including but not limited to interviews and meetings, between, on the one hand, you or any of your lawyers, representatives or agents, and, on the other hand, any Sentinel customer or creditor or any current or former employee, officer, director, agent, counsel, or representative of any Sentinel customer or creditor. (For the sake of emphasis, you are instructed to take note of the fact that this request, like all others in this set of Requests, applies to both documents in your possession, custody or control and documents in the possession, custody or control of any of the Sentinel customers who assigned claims to you.).

- 10 -

Sentinel or its customers in connection with that failure, the actual or alleged causes of such alleged damages or injuries, and the perceptions of the Trustee and/or Sentinel's various customers concerning the accuracy (or lack thereof) of allegations made by the Trustee in the present lawsuits.

In order to address any possible concerns on the Trustee's part regarding this Request encompassing irrelevant nonsubstantive matters, Defendants agreed to limit the reach of this Request to documents touching on any of the subjects specified above with respect to Request No. 3, plus any documents concerning or reflecting any efforts (or lack of efforts) on the part of Sentinel customers to retain documents that may be pertinent to these cases.

The Trustee has also asserted that this Request seeks documents that are either privileged or protected by the work product doctrine. But that assertion is simply wrong with respect to documents reflecting communications between the Trustee and Sentinel customers unless those communications (1) were with customers who have assigned claims to the Trustee, (2) concerned the assigned claims, *and* (3) post-dated such assignment. Defendants are willing to narrow Request No. 4 so as to exclude documents meeting these three criteria. The Trustee has failed to identify any basis for a claim of privilege or work-product protection with regard to his communications with customers outside these limited circumstances, as he must do, given that outside that context the interests of the Trustee and those customers were not aligned, if not outright adverse to one another. *See United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) ("Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected"; this happens once "a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel").

V.  **THE TRUSTEE SHOULD PRODUCE ADDITIONAL DOCUMENTS RELATING TO JAMES FELTMAN, ONE OF HIS TESTIFYING EXPERTS IN THE *BANK OF NEW YORK* CASE (REQUEST NO. 5).**

Defendants' Request No. 5[12] sought all documents the Trustee has shared with or received from its testifying experts in any Sentinel-related litigation. This motion focuses on such materials relating to only one such expert, James Feltman, who testified for the Trustee in *Grede v. The Bank of New York et al.*, 08-cv-2582, concerning key features of Sentinel's alleged fraudulent scheme issues relating to damages. While the Trustee has provided Defendants with Mr. Feltman's three reports in the BONY case and what the Trustee describes as the "supporting material" for those reports, the Trustee has withheld all other documents shared or exchanged between the Trustee (or his representatives) and Mr. Feltman. The Trustee's principal asserted basis for such withholding is alleged lack of relevance.

This Court addressed the extent to which Defendants may seek discovery relating to the Trustee's prior expert witnesses during a status hearing on October 15, 2010. In particular, the Court *denied* the Trustee's request for an order that would have retroactively applied new Fed. R. Civ. P. 26(b)(4), which took effect last December, as a limit on Defendants' discovery from previous expert witnesses, such as Mr. Feltman. *See* Oct. 15, 2010 Tr. at 5-15. The Court further stated that Defendants "can have the access" to such expert material, unless the Trustee could show an absence of "any possible relevance." *Id.* at 14-15.

---

[12] Request No. 5 seeks: All *documents* that you (or any of your lawyers, representatives or agents) have received from, shared with, or provided to any prospective testifying expert you have retained in connection with the Estate Action, the Customer Action, or any other claim or litigation you have pursued or are pursuing against any of the persons or entities referenced in Request No. 2 or Request No. 3 above.

Contrary to the Trustee's position, many of the purported expert opinions that Mr. Feltman tendered in the *BONY* case are relevant to matters at issue in the present cases. For example:

- Feltman offered a number of opinions regarding PreTSL securities, at least some of which he purportedly derived from his analysis of "a substantial amount of market data about pretzel pricing." BONY Trial Tr. at 1873: 9-10, May 10, 2010. This included opinions that PreTSLs "comprised sixty percent of Sentinel's total CDO portfolio," *id.* at 1873: 6-7, that there were no "dramatic movements of value" of PreTSLs and other CDOs" "in the period that we're talking about," *id.* at 1873: 15-16, and that "change in prices in CDO's" therefore were not "a driver" of his analysis of the harm allegedly suffered by Sentinel's customers, *id.* at 1873: 19-23.

- Feltman further opined that BONY's and Sentinel's joint failure to maintain Sentinel customer assets "in segregation" during the last 75 days of Sentinel's operations caused more than $300 million in damages to Sentinel's customers and creditors. *E.g.*, Feltman Supp. Rep. (Apr. 1, 2010) at 4. In the present cases, however, the Trustee seeks to pin much of those same damages on the Defendants. The tension, if not outright inconsistency, between these positions makes the Feltman's opinions in the *BONY* case regarding amount and causation of damages highly relevant here.

- Feltman also offered a variety of opinions regarding the overarching alleged scheme of Sentinel Insiders, over a period of years, to divert supposedly segregated customer assets in support of a leveraged investment strategy for the insiders' benefit. This is precisely the milieu in which the Trustee alleges the present Defendants engaged in wrongdoing, and a full understanding of the facts relating to that scheme is extremely relevant to basic issues in this case, including Defendants' lack of culpability, applicability of the *in pari delicto* defense, causation, and quantification of any damages.

In sum, Mr. Feltman's opinions in the BONY case are relevant to the issues in the present cases, and there is every reason to expect that additional documents pertaining to the Trustee's communications and exchanges of information with him will likewise include or point to relevant facts. Given that lack of relevance appears to be the *only* basis the Trustee has offered for such withholding these additional Feltman documents, as well as the only basis the Court previously indicated it would countenance for such withholding, production of these documents should be ordered forthwith.

VI.  **THE TRUSTEE SHOULD PRODUCE ADDITIONAL DOCUMENTS PERTAINING TO SENTINEL CUSTOMERS' ASSIGNMENTS OF CLAIMS AGAINST THE DEFENDANTS (REQUEST NO. 10).**

Defendants' Request No. 10[13] seeks all documents concerning the assignment of claims to the Trustee by Sentinel customers. The Trustee has limited his production in response to this request to only the following publicly available documents from the Sentinel bankruptcy proceedings: (1) the liquidation plan for the Sentinel estate (2) the liquidation trust agreement and (3) customer ballots regarding the assignment of claims. Defendants believe, and the Trustee has not disputed, that the Trustee or the assigning customers possess a range of other responsive documents. Such documents are likely to include discussions relating to the merits, value, strengths, and weaknesses of the claims considered for assignment, as well as references to facts and events pertinent to such claims. As with Request No. 4, to avoid possible privilege issues, Defendants have agreed to exclude from this request any documents concerning assigned claims that post-date assignment. With that category of documents out of the mix, the bulk of the remaining responsive documents should be produced, and any remaining privilege issues should be few and far between (and can be addressed in a privilege log).

## CONCLUSION

For all of the foregoing reasons, the Trustee should be compelled to produce to Defendants each of the categories of documents described above.

Dated: April 12, 2011　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　/s/ Michael B. Slade
　　　　　　　　　　　　　　　　　　　Michael B. Slade (ARDC #6274231)

---

[13] Request No. 10 seeks: All *documents* concerning the assignment of claims to you by Sentinel customers or creditors.

Brian D. Sieve, P.C. (ARDC #6199741)
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, Illinois 60654-6636
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Howard M. Shapiro
Patrick J. Carome
John A. Valentine
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Mark D. Griffin
Lori H. Patterson
Kristine L. Roberts
BAKER, DONELSON, BEARMAN, CALDWELL
  & BERKOWITZ, PC
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
Facsimile: (901) 577-0870

***Attorneys for Defendants Stephen M. Folan, Jacques de St. Phalle, and FTN Financial Securities Corp., and First Tennessee Bank, N.A.***

William Gibbs Sullivan
Royal B. Martin
Mason N. Floyd
MARTIN, BROWN, SULLIVAN, ROADMAN
& HARTNETT, LTD
135 S. LaSalle St., Ste. 3200
Chicago, IL 60603
Phone: (312) 360-5000

***Attorneys for Stephen M. Folan and Jacques de St. Phalle***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **Motion to Compel Production of Documents in Response to Defendants' January 5, 2011 Document Requests** was filed with the Clerk of the Court on April 12, 2011, which will send notification of such filings to the parties registered with the Court's CM/ECF system, including the recipients shown below.

> Chris C. Gair, Esq.
> James Kevin McCall, Esq.
> Jeffrey S. Eberhard, Esq.
> Gregory M. Boyle, Esq.
> Anne Paffrath Ray, Esq.
> Kevin Case, Esq.
> Vincent E. Lazar, Esq.
> JENNER & BLOCK LLP
> 353 N. Clark Street
> Chicago, IL 60654
> *Attorneys for the Liquidation Trustee*

    /s/ Michael B. Slade
    Michael B. Slade
    KIRKLAND & ELLIS LLP
    300 N. LaSalle Street
    Chicago, Illinois 60654-6636
    Telephone: (312) 862-2000
    Facsimile: (312) 862-2200