**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **FREDERICK J. GREDE**, not individually but as Liquidation Trustee of the Sentinel Liquidation Trust, Assignee of certain claims, </br></br>     Plaintiff, </br></br> v. </br></br> **FTN FINANCIAL SECURITIES CORPORATION** and **JACQUES DE SAINT PHALLE,** </br></br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 09 CV 2258 </br></br> Honorable James B. Zagel |
| **FREDERICK J. GREDE**, not individually but as Liquidation Trustee of the Sentinel Liquidation Trust, </br></br>     Plaintiff, </br></br> v. </br></br> **STEPHEN M. FOLAN, JACQUES DE SAINT PHALLE, FTN FINANCIAL SECURITIES CORP.,** and **FIRST TENNESSEE BANK N.A.,** </br></br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 08 CV 6587 </br></br> Honorable James B. Zagel |

**TRUSTEE'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF
DOCUMENTS RESPONSIVE TO DEFENDANTS' JANUARY 5, 2011 REQUESTS**

Defendants have had Sentinel's contemporaneous records for years and have taken or are taking depositions of virtually every ex-Sentinel employee, Sentinel customer, or third-party which dealt with Sentinel. Not satisfied with that broad discovery, Defendants have now filed a motion to compel seeking Jenner & Block work product and other documents of limited, if any, relevance or evidentiary value.

In particular, Defendants have moved to compel on three categories of documents to which they are not entitled: (1) Jenner & Block work product, including witness interview memos, (2) Jenner & Block communications with every ex-Sentinel employee, customer, and adversary over a three-and-a-half-year period; and (3) Jenner & Block communications with an expert in the Bank of New York case, which were covered by a discovery agreement with BONY counsel. Defendants have not presented a plausible, let alone a substantial, need for requiring the Trustee to produce this work product or search counsel's emails. Instead, Defendants speculate that perhaps the Trustee's counsel told some third-party that Defendants were not liable or that his claims against Defendants were without merit. (Mot. at 9.) Defendants cannot overcome the work product protection based on such speculation, and any marginal relevance Jenner & Block communications might have to this case is substantially outweighed by the incredible burden of combing through hundreds of thousands of Jenner & Block emails for a likely non-existent needle in the haystack.

I.  **Documents Relating to Communications with Sentinel Personnel.**

Defendants seek all communications between Sentinel personnel and the Trustee or his representatives, including Jenner & Block. Defendants' only stated reason for wanting these documents is that they "may shed light on events that transpired at Sentinel during the times relevant to the present litigation." (Mot. at 3.) But Defendants have already taken extensive discovery regarding the events that transpired at Sentinel. Indeed, Defendants have already deposed Sentinel's assistant trader, Jeff Logan, for four full days (and counting). What may "shed light on" what happened at Sentinel are the contemporaneous documents – which Defendants already have – and the deposition testimony of Sentinel employees – which Defendants also have.

Jenner & Block's after-the-fact communications with these individuals are of limited, if any, relevance. Defendants and their counsel themselves have engaged in extensive, post-bankruptcy communications with ex-Sentinel employees, and have set forth no need that would justify their broad and intrusive request regarding the Trustee's communications.

## II. TC Arana Interview Memoranda.

Defendants seek Jenner & Block's memoranda of their interviews of Sentinel's CFO T.C. Arana. These interview memoranda fall squarely within the work product protection and are absolutely immune from discovery. *See* Fed R. Civ. P. 26(b)(3); *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768-69 (7th Cir. 2006) (opinion work product such as interview memos are subject to protection even upon a showing of substantial need). "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particular disfavored because it tends to reveal the attorney's mental impressions." *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981). This Court rejected counsel for BONY's attempt to seek the very same interview memos, holding that they were subject to work product protection. (*Grede v. Bank of New York*, No. 08 cv 2582, Dkt. 108, 124, 126, and 148.)

Defendants do not dispute that these documents are subject to work product protection, but instead assert that they are entitled to overcome the work product protection because it is "self-evident" that they have a "substantial need" for these documents. (Mot. at 6.) Even if counsel's interview memos were subject to the substantial need test, Defendants flunk it badly. Defendants contend that Ms. Arana may possess knowledge which "refutes" the Trustee's claims in this case. (Mot. at 5.) Defendants' speculation aside, even if Ms. Arana does possess knowledge regarding the claims and defenses in this case, that does not subject counsel's interview memos to discovery. Indeed, virtually all of counsel's interview memos in all cases

are of interviews with witnesses who possess knowledge – that is why the interviews occur in the first place.

Defendants' claims of "fairness" are equally unavailing. In particular, Defendants contend that because Ms. Arana is now invoking her Fifth Amendment rights against self-incrimination, the Trustee's possession of interview memos puts them at an unfair disadvantage. (Mot. at 6.) Nothing is further from the truth. Because she is not testifying, there is no use to which the Trustee could possibly put the interview memos – whether for impeachment or otherwise. Counsel's mental impressions contained in the memos plainly are neither discoverable nor admissible. Nor could any of Ms. Arana's statements to the Trustee's counsel be admissible against the Trustee as admissions, as Defendants suggest. Her interests were never aligned with the Trustee's, and the Federal Rules of Evidence do not allow for the statements of predecessors to be admitted as admissions against successors like trustees in any event. Fed R. Evid. 801(d)(2); *Huff v. White Motor Corp.*, 609 F.2d 286, 290-91 (7th Cir. 1979); 8 Norton Bankr. L. & Prac. § 164:2.[1]

### III. Documents Relating to Communications with Third-Parties.

Defendants seek communications between the Trustee or his counsel and defendants in other litigation, specifically BONY, KBW, Cohen & Co., McGladrey & Pullen, and others, or their representatives. Essentially Defendants seek every single communication between Jenner & Block and, among others, Mayer Brown, Williams & Connelly, Sidley, and Duane Morris.

---

[1] Defendants' assertion that Ms. Arana's statements could help establish an *in pari delicto* defense as long as she generally knew about the "leveraging scheme" badly misapprehends the doctrine. (Mot. at 8 n.9.) Defendants conflate the affirmative wrongdoing in which they engaged – bribing Charles Mosley, engaging in a multi-faceted fraud scheme to sell him unsuitable PreTSLs, and accepting fraudulent transfers – with other activities at Sentinel of which Defendants contend Ms. Arana may have been partially aware. This does not establish the defense of *in pari delicto*, which is inapplicable here for numerous other reasons as well.

4

Defendants argue that communications between Jenner & Block and counsel for third parties should be produced because they may shed light on matters relevant to this case such as third-parties' and Defendants' relative culpability. (Mot. at 9-10.) This is a fishing expedition. Apparently, Defendants are hoping that a Jenner & Block lawyer wrote to a lawyer in another case that, apropos of nothing, it turns out that Defendants did nothing wrong and caused no harm to Sentinel or its customers. This is neither likely, relevant, nor admissible. After-the-fact statements made by counsel are not relevant to what actually happened at Sentinel, and it is difficult to imagine what, if any, use Defendants could put to such statements. *See United States v. Valencia*, 826 F.2d 169, 172-74 (2d Cir. 1987) (counsel's statements irrelevant); *Moody v. Township of Marlboro*, 885 F. Supp. 101, 104 (D.N.J. 1995) (counsel's statements inadmissible as admissions).

Even if such a communication existed, it would hardly justify the extraordinary burden required to sift through every single email between Jenner & Block and opposing counsel. This is true notwithstanding Defendants' attempt to "limit" this request to a list of eight items encompassing everything related to Sentinel. (Mot. at 9-10.)

**IV. Documents Relating to Communications with Customers.**

Defendants seek communications between the Trustee or his counsel and Sentinel customers. To the extent this request covers customers which the Trustee has sued to recover pre- and post-petition transfers, then communications with those customers are no different than communications with other third-party defendants. These documents need not be produced for the reasons set forth in Section III above.

With respect to communications with other customers, Defendants expressly seek attorney work-product, including "perceptions of the Trustee and/or Sentinel's various customers

concerning the accuracy (or lack thereof) of allegations made by the Trustee in the present lawsuits." (Mot. at 11.) That request is improper on its face.

Defendants themselves acknowledge that communications after the assignment of claims took place are subject to protection under the work product doctrine and common interest privilege. (Mot. at 11.) They contend, however, that communications before the date of the assignments are not protected. (*Id.*) This is plainly wrong.

The common interest privilege encompasses <u>all</u> communications between parties who are coordinating efforts for a common legal purpose. *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 964-5 (N.D. Ill. 2010) (recognizing that "the doctrine applies broadly to civil litigation and includes situations where clients share a common legal interest but are represented by separate attorneys"); *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004) (common interest doctrine applies to parties with a "common interest" in current or potential litigation, as actual or potential plaintiffs or defendants). This is indisputably the case with respect to communications with customers who assigned claims to the Trustee, which are the very claims the Trustee is pursuing in the Customer Action.

The existence of the common interest privilege is triggered by the Trustee's coordination with those customers, not the date of the assignment of claims. *United States v. BDO Seidman, LLP*, 429 F. 3d 806, 816 (7th Cir. 2007); *In re Worldwide Wholesale Lumber, Inc.*, 392 B.R. 197, 204 (Bkrtcy. D.S.C. 2008). Here, the Trustee and creditors have been coordinating litigation efforts on all of the various Sentinel matters since his appointments in 2007. Communications

between and work product shared among them are protected under the common interest doctrine.[2]

### V.   Document Relating to James Feltman.

The final category of documents Defendants seek are documents relating to forensic expert James Feltman's work in the Bank of New York matter. Defendants already have Mr. Feltman's reports and all of the exhibits, supporting materials, and documents on which he relied in forming his opinions. Defendants nevertheless seek two additional categories of documents. The first category of documents Defendants seek consists of documents provided to Mr. Feltman which he did not consider or rely on in forming his opinions. These documents largely consist of pleadings, background materials, Sentinel and bank statements, and information that was otherwise provided in a more useable format (and which Defendants were provided). Many of these documents are publicly-available or have otherwise been provided to Defendants on the ADI database or from third parties such as the Bank of New York. However, if Defendants still wish to receive these documents, the Trustee is willing to work with Defendants to reach an agreeable resolution.

The second category of documents Defendants seek consists of all communications between Jenner & Block and Mr. Feltman and his firm relating to his work in the BONY case. All of those communications were covered by an agreement between the Trustee and BONY that all communications with experts were immune from discovery. Defendants here have already received everything that BONY received and there is no reason Defendants should receive more information about the expert than the defendants in the case in which he testified.

---

[2] The same is true with respect to Defendants' request for "discussions relating to the merits, value, strengths, and weaknesses of the claims considered for assignment." (Mot. at 14)

Defendants' only argument for why they are entitled to those communications is that some of the opinions Mr. Feltman gave in the BONY case are relevant in these cases. Although some of Mr. Feltman's <u>opinions</u> are perhaps relevant, that says nothing about the relevancy of counsel's <u>communications</u> with him. The entire purpose of the 2010 amendments to Rule 26 protecting communications with experts was to "ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery." 2010 Adv. Cmt. Notes. Moreover, the amendments were meant to apply in this precise situation: "[A] party may be involved in a number of suits about a given product or service, and may retain a particular expert witness to testify on that party's behalf in several of the cases. In such a situation, the protection applies to communications between the expert witness and the attorneys representing the party in any of those cases." *Id.* Although the amendments were not in effect at the time of the communications with Mr. Feltman in the BONY case, given counsel's discovery agreement and the policies underlying the amendments, Defendants' request should be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Compel Trustee to Produce Documents in Response to Defendants' January 5, 2011 Document Requests should be denied in full.

Dated: April 15, 2011

Respectfully submitted,

   */s/ Jeffrey S. Eberhard*
FREDERICK J. GREDE, not individually but as Liquidation Trustee of the Sentinel Liquidation Trust, and Assignee of certain claims

J. Kevin McCall (ARDC # 03125685)
Chris C. Gair (ARDC # 6190781)
Gregory M. Boyle (ARDC #6242559)
Jeffrey S. Eberhard (ARDC # 6276471)
Anne P. Ray (ARDC #6291910)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654
Phone: (312) 222-9350
Facsimile: (312) 527-0484

*Counsel for the Liquidation Trustee*

9